# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN I. MOELLER,<br>    Plaintiff, | )<br>)<br>) |
| vs. | )    Civil Action No. 05-01352<br>)    Judge Nora Barry Fischer |
| TOWNSHIP OF NORTH STRABANE, ET AL.,<br>    Defendants. | )<br>)<br>) |

## MEMORANDUM OPINION

The instant civil rights action arises from a domestic dispute between Plaintiff John I. Moeller and his former wife, Sherri Moeller,[1] regarding the right of possession (and repossession) of their former residence after the expiration of a Protection from Abuse Order filed by Ms. Moeller against Plaintiff.

## FACTS [2]

The instant case centers around incidents occurring on three dates: August 11, 2005, August 13, 2005 and August 20, 2005. (Docket No. 58 at ¶4; Docket No. 61 at ¶4).

---

[1] Sherri Moeller is not a party to this action.

[2] Unless otherwise indicated, the parties agree as to all facts.

Plaintiff initially filed his "Responsive Concise Statement of Facts" as an exhibit to his Plaintiff's Opposition to Motion for Summary Judgment, (*see* Docket No. 60-10), which the Clerk of Court re-docketed as a separate document, (*see* Docket No. 61), and issued a Quality Control Message to Plaintiff's counsel advising him of the error, (*see* Text Order Entry of March 25, 2008).

The Court notes that Plaintiff devotes approximately seven (7) pages of his Plaintiff's Opposition to Motion for Summary Judgment to the "Background of the Case," in which he alleges facts not raised in his "Responsive Concise Statement of Facts" or "Additional Concise Statement of Facts." Because Local Rule 56.1 requires a party opposing summary judgment, in a separately filed concise statement of facts, to set forth "any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the court to determine the motion for summary judgment," W.D. Pa. L.R. 56.1(C)(1)(c), the Court declines to consider any allegations of fact in Plaintiff's "Background of the Case" and not included in his "Responsive Concise Statement of Facts" or "Additional Concise Statement of Facts."

On February 12, 2004, Judge Mark Mascara of the Court of Common Pleas of Washington County entered a Protection from Abuse Order ("PFA") against the Plaintiff, mandating that he have no contact with Sherri Moeller (his wife) or Victoria Moeller (his step-daughter), effective from February 23, 2004 until August 11, 2005. (Docket No. 58 at ¶5; Docket No. 61 at ¶5).[3] While in effect, the PFA Order completely evicted and excluded Plaintiff from the residence at 103 Henderson Drive in Canonsburg, Pennsylvania, which he previously shared with Sherri and Victoria Moeller. (Docket No. 58 at ¶6; Docket No. 61 at ¶6). As a result, Sherri Moeller received exclusive possession of the residence for a period of eighteen (18) months. (Docket No. 58 at ¶6; Docket No. 61 at ¶6). Nearly one year later, on January 3, 2005, before the Criminal Division for the Court of Common Pleas of Washington County, Plaintiff pled guilty to the following charges related to the physical and sexual abuse of Victoria Moeller, a minor at the time: two counts of Statutory Sexual Assault (at Nos. 2468 and 2469 of 2003) and two counts of Corruption of the Morals of a Minor (at Nos. 2467 and 2470 of 2003). (Docket No. 58 at ¶7; Docket No. 61 at ¶7). Plaintiff received the following sentence: beginning January 18, 2005, a term of probation and home monitoring not to exceed thirty-six (36) months and no less than nine (9) months. (Docket No. 58 at ¶7; Docket No. 61 at ¶7). Furthermore, pursuant to his sentencing order, Plaintiff was to have no contact with Sherri Moeller or his step-daughter for a period thirty-six (36) months. (Docket No. 58 at ¶7; Docket No. 61 at ¶7).[4]

---

[3] A copy of said PFA Order is attached to Defendants' motion at Docket No. 57-4. Further, Plaintiff asserts that because he adopted Victoria Moeller, that made her "his daughter and not 'step-daughter.'" (Docket No. 61 at ¶5). Nonetheless, for ease of reference, the Court will refer to Victoria Moeller by name.

[4] A copy of the sentencing order is attached to Defendants' motion at Docket No. 57-5.

On August 11, 2005, Plaintiff, along with two constables and Jack Dalbo, went to the residence at 103 Henderson Drive with copies of the Sentencing and PFA Orders. (Docket No. 58 at ¶11; Docket No. 61 at ¶11).[6] Upon presentation of the respective Orders, Plaintiff evicted Sherri and Victoria Moeller from the residence. (Docket No. 58 at ¶11; Docket No. 61 at ¶11). After the eviction, Defendant Officer Krocsko responded to a complaint at the residence and, upon arrival, he learned that Plaintiff had evicted Sherri Moeller. (Docket No. 58 at ¶14).[7] Plaintiff reported to Defendant Officer Krocsko that "he believed guns were missing," and Defendant Officer Krockso advised him to speak with his attorney. (Docket No. 58 at ¶14). Plaintiff then arranged to tow Sherri Moeller's car from the residence. (Docket No. 58 at ¶15; Docket No. 61 at ¶15).[8] As noted, before their eviction on August 11, 2005, Sherri and Victoria Moeller lived at the residence and, as such, Defendants assert that some of their "personal belongings remained in the residence after they were evicted." (Docket No. 58 at ¶¶12-13; Docket No. 61 at ¶¶12-13).[9]

---

[5] Jack Dalbo is Plaintiff's friend. He is not a party to this suit, but has provided a deposition in this matter.

[6] Plaintiff clarifies that "it would be more accurate to say that the Plaintiff went to his home upon the expiration of his PFA Order and asked Sherri and Victoria Moeller to leave, on the basis that Judge Emery's Order forbade contact between them." (Docket No. 61 at ¶11).

[7] Plaintiff denies the same, noting that Defendant Officer Krocsko's affidavit differs from deposition testimony of other witnesses, however Plaintiff fails to point to any purported contradictions.

[8] Plaintiff further notes that he paid for storage and that towage was necessary in that Sherri Moeller's car blocked access to the residence. (Docket No. 61 at ¶15).

[9] Plaintiff lacks knowledge as to whether Sherri and Victoria Moeller retained "personal belongings" at the residence after their eviction. (Docket No. 60-10 at ¶12).

On August 13, 2005, Defendants Krocsko and Stevens responded to a call regarding a domestic matter between Plaintiff and Sherri Moeller. (Docket No. 58 at ¶16; Docket No. 61 at ¶16). Upon their arrival, Sherri Moeller informed the officers that she had returned to the home to obtain personal items after being evicted two days prior, and she also informed the officers that her car was missing. (Docket No. No. 58 at ¶16).[10] Defendant Police Officers advised Sherri Moeller that "it was her residence and that she could gain entry to the premises any way she saw fit." (Docket No. 58 at ¶17; Docket No. 61 at ¶17). Later that same day, Defendant Police Officers were dispatched back to the Moeller residence after being contacted by Plaintiff's mother and a neighbor, alleging that Sherri Moeller was breaking into the Moeller residence. (Docket No. 58 at ¶18; Docket No. 61 at ¶18). Defendant Police Officers advised Sherri Moeller to gather her personal belongings and leave the premises. (Docket No. 58 at ¶18; Docket No. 61 at ¶18). Shortly thereafter, Plaintiff arrived on the scene (with his friend, Dalbo) and advised Defendant Police Officers that Sherri Moeller was not permitted in the residence according to the Sentencing and PFA Orders, a copy of which Dalbo presented to them at that time. (Docket No. 58 at ¶19; Docket No. 61 at ¶19).[11] According to Defendants, Sherri Moeller left the scene "as instructed." (Docket No. 58 at ¶22).[12] Plaintiff then "began yelling obscenities" at Defendant Police Officers and "verbally refused to leave

---

[10] Plaintiff "has no idea of what his ex-wife told these Defendants," (Docket No. 60-10 at ¶16), which the Court construes as a denial for lack of knowledge.

[11] As of August 13, 2005, Plaintiff had not moved into the residence and did not do so until August 18, 2005. (Docket No. 58 at ¶20; Docket No. 60-10 at ¶20). Plaintiff agrees but notes that his "ex-wife left the premises in such a deplorable condition that it was not inhabitable." (Docket No. 60-10 at ¶20).

[12] Plaintiff denies that Sherri Moeller left the residence "as instructed" by Defendant Police Officers. (Docket No. 60-10 at ¶21).

4

the scene." (Docket No. 58 at ¶22; Docket No. 61 at ¶22). Defendant Police Officers advised Plaintiff that if he did not leave the scene, he would be arrested for causing a disturbance. Plaintiff eventually left. (Docket No. 58 at ¶22; Docket No. 61 at ¶22).

On August 20, 2005, Defendant Police Officers responded to a call from Plaintiff, again claiming that Sherri Moeller had attempted to break into the residence.[13] (Docket No. 58 at ¶23; Docket No. 61 at ¶23). Neither party provides any further detail.[14]

## PROCEDURAL HISTORY

On September 27, 2005, Plaintiff filed his Complaint against North Strabane Township and the North Strabane Police Department ("North Strabane Defendants"), as well as Officer Jerry Stevens, Officer Michael Krocsko, and Ret. Officer William Miller ("Defendant Police Officers") (collectively, "Defendants"), alleging numerous violations of his civil rights under the United States Constitution pursuant to 42 U.S.C. § 1983, intentional infliction of emotional distress under Pennsylvania state law, and civil violations under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. 1961, et seq., commonly referred to as RICO ("RICO"). (Docket No. 1). On November 17, 2005, Defendants filed their "Answer and Affirmative Defenses to Plaintiff's Complaint Filed on Behalf of Defendants Township of North Strabane, the North Strabane Police

---

[13] Plaintiff denies to the extent that he asserts that Sherri Moeller "broke into his yard through a fence, and then into a shed on his property." (Docket No. 60-10 at ¶23).

[14] Plaintiff asserts additional allegations of facts, entitled "Additional Concise Statements of Fact." (*See* Docket No. 61 at ¶¶24-97). However, said paragraphs consist of Plaintiff recounting deposition testimony of witnesses (specifically, Mr. Dalbo, Defendant Officer Stevens, "Chief Strimmel," Plaintiff, and Defendant Officer Miller), the substance of which consists of rhetoric, opinion, and legal conclusions as opposed to facts. For example, Plaintiff asserts that, according to Mr. Dalbo's deposition, "Defendant STEVENS simply refused to listen to reason that day." (Docket No. 61 at ¶31) (citation omitted) (emphasis in original). Such a statement is not a fact and requires no further discussion from the Court.

Department, Gerald Stevens (Misspelled in Plaintiff's Complaint) and Michael Krocsko." (Docket No. 9). [15]

On March 8, 2007, the Court ordered a stay in this case in order to accommodate Defendants' counsel's military service obligations.[16] On June 20, 2007, the Court referred this case to Magistrate Judge Lenihan for the purposes of mediation. (Docket No. 41). On August 21, 2007, Judge Lenihan reported that the case did not settle. (*See* August 21, 2007 Text Order Entry).

On September 25, 2007, Defendant William Miller filed Defendant's Answer to Plaintiff's Complaint & Affirmative Defenses. (Docket No. 46). On November 16, 2007, Plaintiff filed a Notice of Voluntary Dismissal of William Miller, (Docket No. 52), which the Court granted on the same day dismissing Defendant Miller with prejudice, (Docket No. 53).

On February 21, 2008, Defendants filed the instant Motion for Summary Judgment. (Docket No. 57) ("Defendants' motion"). On March 24, 2008, Plaintiff filed Plaintiff's Opposition to Motion for Summary Judgment. (Docket No. 60) ("Plaintiff's opposition"). Said motion is fully briefed and ripe for disposition.

**STANDARD**

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Pursuant to Rule 56, the court must enter summary judgment against

---

[15] The Court notes that, on the same day, the "Answer and Affirmative Defenses" was initially filed on behalf of Defendant Krocsko only, (*see* Docket No. 8), and subsequently re-filed on behalf of the above Defendants, (*see* Docket No. 9).

[16] On April 6, 2007, the instant case was reassigned to undersigned Judge.

the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007). Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249. "The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civil Action No. 05-942, 2008 WL 828033, at *4 (W.D. Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721 at 40 (2d ed.1983))); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-23. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## ANALYSIS

Plaintiff's Complaint alleges three causes of action: (1) civil rights violations under 42 U.S.C. § 1983 against all Defendants for alleged deprivation of Plaintiff's property without due process and alleged deprivation of his liberty interest in his reputation without due process;[17] (2) intentional infliction of emotional distress against all Defendants; and (3) federal RICO violations against Defendant Township of North Strabane, Defendant Stevens, and Defendant Krocsko.[18] The Court will address each claim in turn.

---

[17] Plaintiff's Complaint references, in passing, that his case arises under (among other clauses of the United States Constitution) the Equal Protection Clause. (*See* Complaint at ¶39). Defendant's motion specifically references and moves for summary judgment as to Plaintiff's purported equal protection claim. (*See* Defendants' motion at 3-5). However, in his opposition, Plaintiff offers no argument as to equal protection and fails to even address the claim. Therefore, to the extent that Plaintiff pled a claim under the equal protection clause, the Court finds that, considering his failure to specifically respond and address equal protection in any manner whatsoever in his opposition brief, Plaintiff has abandoned said claim.

[18] Plaintiff's federal RICO claim does not name the North Strabane Police Department. (*See* Complaint at ¶¶67-71).

1.  *Section 1983 claims*

42 U.S.C. § 1983 provides a remedy for any person who, under color of law, is deprived of his constitutional rights.[19] 42 U.S.C. § 1983. To establish a valid section 1983 claim, a plaintiff "must demonstrate that the conduct complained of was committed by a person acting under state law and that the conduct deprived him of rights, privileges or immunities secured by the Constitution." *Carter v. City of Philadelphia*, 989 F.2d 117, 119 (1993) (internal quotation marks and citation omitted).

In his Complaint, Plaintiff appears to allege two separate section 1983 violations: (1) deprivation of property rights without due process of law; and (2) deprivation of liberty interest in reputation without due process of law. However, a cursory reading of Plaintiff's opposition reveals that he only alleges a section 1983 claim based on an alleged deprivation of his liberty interest in his

---

[19] To the extent Plaintiff alleges a section 1983 claim against the North Strabane Police Department, it fails because a municipal police department is not a proper party in a section 1983 action. *See Johnson v. City of Erie,* 834 F. Supp. 873, 879 (W.D. Pa. 1993) ("The numerous courts that have considered the question of whether a municipal police department is a proper defendant in a section 1983 action have unanimously reached the conclusion that it is not.") (citing *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 826 (D. N.J.1993) (collecting cases)).

reputation without due process of law.[20] (*See* Plaintiff's opposition at 7-16). Accordingly, the Court will only consider the parties' arguments as to that section 1983 claim.

"The liberty interests protected by procedural due process are broad in scope." *Baraka v. McGreevey*, 481 F.3d 187, 209 (3d Cir. 2007) (citation omitted). "Reputational harm can constitute a protected interest when coupled with an additional deprivation of a protected right or interest." *Id.* at 208 (citation omitted). "[T]o state a valid claim for deprivation of a protected interest based on reputational harm, a plaintiff must allege harm that forecloses future opportunities." *Id.* at 209, n.17.

Plaintiff's section 1983 claim contends that Defendants deprived him of his liberty interest in his reputation without due process of law when they threatened to arrest him after he verbally protested their allowing his estranged wife to enter his home and remove her belongings. The only harm that Plaintiff alleges as a result of Defendants' arrest threat is that his neighbors are not as outwardly friendly toward him as they once were. (*See* Complaint at ¶55; Plaintiff's opposition at 13). Such an injury is not sufficient enough to support an actionable claim for deprivation of liberty interest in reputation. *See Paul v. Davis*, 424 U.S. 693, 711-12 (U.S. 1976) (holding that reputation alone is not a constitutionally protected property or liberty interest). Moreover, even if Plaintiff's loss of standing among his neighbors was a sufficient enough injury to bring a section 1983 claim,

---

[20] To the extent that Plaintiff contests the Court's understanding of the claims he asserts, a section 1983 claim based on Plaintiff's deprivation of property rights without due process of law would fail. The Fourteenth Amendment states that no State shall "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. "Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In the present case, Plaintiff does not identify of what property interest he was deprived; instead, he only points to unspecified "financial harms" he has suffered. (Complaint at ¶52). Without identifying a specific property interest of which he was deprived, the Court is unable to proceed to see if that property interest is defined by Pennsylvania law and if Plaintiff was actually deprived of it.

the claim would still fail because Defendant Officers were justified in threatening to arrest Plaintiff. *See, e.g., Cherry v. Garner*, Civil Action No. 03-cv-01696, 2004 U.S. Dist. LEXIS 26060, at *6 (E.D. Pa. Dec. 30, 2004) (noting that one can be arrested for disorderly conduct in Pennsylvania). Plaintiff does not dispute that he remained outside the boundaries of his property and began yelling profanities at Defendant Officers. In Pennsylvania, it is a crime to intentionally cause public inconvenience, annoyance or alarm by means of unreasonable noise, obscene language or gestures. 18 Pa. Cons. Stat. § 5503 (2008). Therefore, Defendant Kroscko's threat to arrest Plaintiff was justified, and Plaintiff's section 1983 claim is without merit.

The Court will grant summary judgment as to Plaintiff's section 1983 claim.

2. *Plaintiff's intentional infliction of emotional distress claim*

In Pennsylvania, "'[t]o prove a claim of intentional infliction of emotional distress, the following elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe.'" *Pappa v. Unum Life Ins. Co. of Am.*, Civil Action No. 3:07-CV-0708, 2008 U.S. Dist. LEXIS 21500, at *49 (M.D. Pa. Mar. 18, 2008) (quoting *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)). For conduct to be "extreme and outrageous," it must "'go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized society.'" *Id.* at *49-50 (quoting *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997)). Moreover, "to prevail on an intentional infliction of emotional distress cause of action, a plaintiff must provide competent medical evidence to prove the existence of emotional distress." *Id.* at *50 (citations omitted).

In the present case, Plaintiff brings an intentional infliction of emotional distress claim against Defendants for their alleged treatment of him, e.g., threatening him with arrest, and for their allowing Sherri Moeller to enter his residence to collect her personal belongings. Plaintiff's intentional infliction of emotional distress claim fails for two reasons. First, Defendants' conduct, even as described by Plaintiff, does not rise to the level of "extreme and outrageous." Second, Plaintiff has not produced any medical evidence indicating that he has suffered emotional distress.[1][2] As Plaintiff has failed to show that Defendants' conduct was "extreme and outrageous" and failed to provide any medical evidence of emotional distress, his intentional infliction of emotional distress claim is without merit.

The Court will grant summary judgment as to Plaintiff's intentional infliction of emotional distress claim.

3.  *Plaintiff's federal RICO claim*

"There are four basic elements that a plaintiff must establish to prove any civil RICO action: (1) the existence of a RICO enterprise; (2) the existence of a pattern of racketeering activity; (3) a nexus between the defendant, the pattern of racketeering activity or the RICO enterprise; and (4) resulting injury to the plaintiff's business or property." *Smith v. Jones, Gregg, Creehan & Gerace, LLP.*, Civil Action No. 2:08-cv-365, 2008 U.S. Dist. LEXIS 27427, at *3 (W.D. Pa. Mar. 27, 2008) (citation omitted).

RICO's private right of action is contained in 18 U.S.C. § 1964(c), which provides, in relevant part, that "[a]ny person injured in his business or property by reason of a violation of section

---

[21] Plaintiff's opposition contains vague references to a "cover-up" involving Washington Hospital and lost medical records. (See Plaintiff's opposition at 5-6). However, without any evidence whatsoever, Plaintiff's allegations are nothing more.

1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. 1964(c).[22] Section 1962, in turn, makes it unlawful "to invest, in an enterprise engaged in interstate commerce, funds derived . . . from a pattern of racketeering activity," to acquire or operate an interest in any such enterprise through "a pattern of racketeering activity," or to conduct or participate in the conduct of that enterprise "through a pattern of racketeering activity." 18 U.S.C. § 1962. Section 1961 defines "racketeering activity" to include a host of so-called predicate acts, "chargeable" or "indictable" under enumerated state and federal laws, including state-law murder, arson, and bribery statutes, federal mail and wire fraud statutes, and the anti-fraud provisions of federal securities laws. 18 U.S.C. § 1961(1). Section 1961 further provides that a "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

Pertinent here, and specifically delineated under "racketeering activity" as an indictable act, Plaintiff alleges that Defendants' alleged racketeering activity included violations of section 1510 (relating to obstruction of criminal investigations)[23] and section 1511 (relating to the obstruction of

---

[22] Section 1962 of Title 18 contains RICO's criminal prohibitions.

[23] Section 1510 provides: "Whoever wilfully endeavors by means of bribery to obstruct, delay, or prevent the communication of information relating to a violation of criminal statute of the United States by any person to a criminal investigator shall be fined under this title, or imprisoned not more than five years, or both." 18 U.S.C. § 1510.

13

State or local law enforcement).[24] Simply put, Plaintiff has made no allegations, let alone proffered any evidence, regarding any acts of bribery (section 1510) or conspiracy to obstruct law enforcement through the facilitation of an illegal gambling business (section 1511). Furthermore, in his opposition brief, Plaintiff merely recounts the elements of a civil RICO claim, at one point quoting his Complaint in which he "alleged that 'the principal object of the conspiracy was to systematically injure the reputation of the Plaintiff, while permitting Sherri Moeller to carry on criminal activities at his property, resulting in a loss of property to the Plaintiff.'" (Plaintiff's opposition at 18-19) (quoting Complaint at ¶72). Such an allegation does not implicate any conduct under section 1510 or 1511, and Plaintiff fails to point to another indictable act listed under section 1961, which would encompass said allegation.[25] Hence, Plaintiff has wholly failed to show that Defendants engaged in "racketeering activity." In short, Plaintiff has offered no evidence to establish a civil RICO claim against the named Defendants and said claim borders on frivolity.

The Court will grant summary judgment as to the federal RICO claim.

---

[24] Section 1511 provides: "It shall be unlawful for two or more persons to conspire to obstruct the enforcement of the criminal laws of the State or political subdivision thereof, with the intent to facilitate an illegal gambling business . . . ." 18 U.S.C. § 1511.

[25] Nevertheless, the Court notes that Plaintiff's Complaint only references section 1510 and 1511 as possible "racketeering activity."

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment [57]. An appropriate order to follow.

<u>s/ Nora Barry Fischer</u>
Nora Barry Fischer
United States District Judge

Dated: August 1, 2008

cc/ecf: All counsel of record.